UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY KEITH FORKUSH,<br><br>Plaintiff<br><br>v.<br><br>NANCY A. BERRYHILL[1], Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 2:16-cv-03184-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Anthony Keith Forkush ("Plaintiff") filed a complaint seeking review of Defendant Commissioner of Social Security's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 10, 12] and briefs addressing disputed issues in the case [Dkt. 23 ("Pltf.'s Br."); Dkt. 24 ("Def.'s Br."); Dkt. 25 (Pltf.'s Reply)]. The Court has taken the parties' briefing under

---

[1] The Court notes that Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration on January 23, 2017. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Nancy A. Berryhill for Carolyn W. Colvin as the defendant in this action.

submission without oral argument. For the reasons discussed below, the Court finds that this matter should be remanded for further proceedings.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

On February 15, 2013, Plaintiff filed an application for DIB, alleging that he became disabled as of April 10, 2012. [Dkt. 19, Administrative Record ("AR") 140, 315-316.] The Commissioner denied his initial claim for benefits and then denied his claim upon reconsideration. [AR 205-208; 212-216.] On September 8, 2014, a hearing was held before Administrative Law Judge ("ALJ") Sally Reason. [AR 87-139.] On October 8, 2014, the ALJ issued a decision denying Plaintiff's request for benefits. [AR 178-198.] Plaintiff requested review from the Appeals Council, and in January 2015, the Appeals Council remanded the claim, finding that the ALJ did not adequately evaluate all opinion evidence and did not address the inconsistencies in the medical expert's testimony. [AR 199-204.]

Subsequently, on June 24, 2015, a second hearing was held before the ALJ. [AR 45-86.] On September 14, 2015, the ALJ issued a decision again denying Plaintiff's request for benefits. [AR 15-44.] Plaintiff requested review from the Appeals Council on October 7, 2015, but the Appeals Council denied his request for review on March 16, 2016. [AR 1-6.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. § 404.1520(b)-(g)(1). At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since April 10, 2012, the alleged onset date. [AR 20.] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: obesity, degenerative disc disease, generalized anxiety disorder, depression, intermittent explosive disorder, and polysubstance abuse (in remission). [*Id.* (citing 20 C.F.R. §§ 404.1520(c).] Next, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [AR 438 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1; 20 C.F.R.

§§ 404.1520(d), 404.1525, and 404.1526).]

The ALJ found that Plaintiff had the following residual functional capacity (RFC):

> [L]ight work as defined in 20 CFR 404.1567(b) except he could occasionally balance, bend, climb, crawl, crouch, kneel, and stop but could not work ladders, heights, or moving machinery. He would need to avoid public contact entirely and could have only minimal or limited interaction of a superficial nature with coworkers or supervisors. The claimant would be able to perform simple tasks.

[AR 26.] Applying this RFC, the ALJ found that Plaintiff was unable to perform his past relevant work, but determined that based on his age (51 years old), high school education, and ability to communicate in English, he could perform representative occupations such as cleaner, housekeeping (DOT 323.687-014) and mail clerk (DOT 209.687-026) and, thus, is not disabled. [AR 36-38.]

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

### IV. DISCUSSION

**A. The ALJ's Step Two Determination Was Proper.**

Plaintiff contends that the ALJ erred in finding that his plantar fasciitis, hemorrhoids, and migraine headaches were not severe. [Pltf.'s Br. at 3.] The Court disagrees.

3

At step two of the sequential evaluation process, a plaintiff has the burden to present evidence of medical signs, symptoms, and laboratory findings that establish a medically determinable physical or mental impairment that is severe and can be expected to result in death or last for a continuous period of at least 12 months. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); *see also* 20 C.F.R. §§ 404.1520, 404.1509. Substantial evidence supports an ALJ's determination that a claimant is not disabled at step two when "there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment." *Ukolov*, 420 F.3d at 1004-05 (citing Social Security Ruling ("SSR") 96-4p). An impairment may never be found on the basis of the claimant's subjective symptoms alone. *Id.* at 1005.

Step two is "a de minimis screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Applying the applicable standard of review to the requirements of step two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *see also Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."). An impairment or combination of impairments is "not severe" if the evidence established only a slight abnormality that had "no more than a minimal effect on an individual's ability to work." *Webb*, 433 F.3d at 686 (internal citation omitted).

### 1. Plantar Fasciitis

The ALJ determined at step two of the 5-step analysis that Plaintiff's plantar fasciitis was not severe. Plaintiff testified that he can only stand for short periods and has worn orthotics for many years to help alleviate pain caused by plantar

4

fasciitis. [AR 22, 76.] The ALJ concluded that despite a reported history of plantar fasciitis, Plaintiff was able to ambulate independently upon examination in July 2013. [AR 22, 1664-1667.] The ALJ also noted that aside from the July 2013 medical examination, the only other notation of any treatment for plantar fasciitis was in January 2015, when Plaintiff received a cortisone shot in his left foot to relieve heel pain. [AR 22, 2109-2110.] Plaintiff was advised at that time to stretch and ice the painful area and "[m]odify activities for a few days." [AR 2110.]

Plaintiff contends that there were additional references to plantar fasciitis in the record, and cites to visits in 2010, 2011, and 2013. However, the 2010 and 2011 visits pre-date his alleged onset date of April 2012 and thus, are of limited relevance. *See Carmickle*, 533 F.3d at 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance"). Plaintiff also identifies two additional records in 2013: a January 2013 notation confirming that Plaintiff is wearing orthotics; and an August 2013 notation that lists "plantar fasciitis" under the heading "active problem list." [AR 595, 1787.] However, Plaintiff fails to explain how these additional medical records demonstrate that Plaintiff's plantar fasciitis in any way limited his ability to function, mentally or physically, at work. These records appear to be consistent with the ALJ's finding that despite a reported history of plantar fasciitis, Plaintiff was able to ambulate independently upon examination in July 2013. Accordingly, Plaintiff failed to meet his burden to provide evidence to support his claim that plantar fasciitis was a severe impairment during the relevant period.

**2. Boils/Hemorrhoids**

Plaintiff contends that the ALJ also erred in finding Plaintiff's hemorrhoids and boils not severe because although he lived with these conditions his entire life, the record shows that the conditions worsened such that they now affect his ability to work. [Pltf.'s Br. at 6.] Plaintiff testified that these conditions prevent him from sitting for any extended period. Plaintiff states that he had multiple emergency

5

room visits, follow-up appointments, and telephone consults for these conditions from 2012-2014. [Pltf.'s Br. at 6 (citing AR 607-610, 709-733, 1023, 1027-1034, 1063-1064, 1515, 1549-1551, 1558-1560, 1572, 1787-1788, 1794-1798, 1799-1801, 2009-2010).]

The ALJ reasoned that although Plaintiff had several visits to the emergency room in July 2013, each times his boils were cleaned, he was informed that the hemorrhoids would likely heal with time, and he was discharged with hydrocortisone cream and on one occasion a Norco prescription upon request. [AR 22, 1791-1803.] At one visit, Plaintiff "went to the emergency room alleging 'uncontrollable bleeding' from a hemorrhoid, but his physical examination did not reveal any bleeding at all." [AR 22.] Plaintiff went to the emergency room again in August 2013 for his hemorrhoids, but did not receive any treatment. [AR 21, 1787-1788.] In April 2014, Plaintiff had a furuncle on his right hip and his treatment provider recommended salt water soaks since it was not ready for incision and drainage. In August 2014, Plaintiff was again prescribed hydrocortisone cream for hemorrhoids. [*Id.*] Therefore, the fact that Plaintiff sought treatment for these conditions in 2012-2014 does not undermine the ALJ's finding that Plaintiff has been able to work for years with these impairments. The conservative treatment received does not support a worsening to the point that these conditions more than minimally affect his ability to work. Accordingly, Plaintiff failed to meet his burden to provide evidence to support his claim that his boils or hemorrhoids were a severe impairment during the relevant period.

### 3. Migraine Headaches

Plaintiff also contends that the ALJ erred in finding that Plaintiff's migraines did not meet the 12-month durational requirement because Plaintiff started receiving treatment for migraines as early as 2010. [Pltf.'s Br. at 6-7.] Interestingly, Plaintiff's counsel at the administrative hearing stated that Plaintiff started experiencing migraines in 2014 (not 2010). [AR 48-49.] The ALJ concluded that

there were only sporadic complaints of headaches in the record that did not meet the 12-month duration requirement. [AR 22-23.] The Court agrees.

The record shows that in 2010, Plaintiff received a CT scan, the results of which were "unremarkable." [AR 2119.] The next record regarding migraines is in November 2014, where Plaintiff reported having one to two headaches per month. [AR 2084.] In December 2014, Plaintiff informed his treatment provider that his headaches improved with over-the-counter medications. [AR 22, 2096.] Plaintiff reported more frequent headaches in February 2015, but he also reported that he skipped meals and did not adequately hydrate. [AR 22, 2119-2120.] By April 16, 2015, Plaintiff stated that he was doing much better and that his headaches were controlled with Topomax. [AR 2050.] However, two weeks later, on April 30, 2015, Plaintiff reported that his headaches had improved, but he still had four headaches that month. [AR 2139.] There are no other references to migraines in the record. As such, the medical record supports the ALJ's conclusion that Plaintiff's headaches have not persisted for a 12-month period and his improved condition shows there is insufficient evidence it will consistently persist for 12 months into the future. [AR 23.] The one isolated note in 2010 about a CT scan, the results of which were unremarkable, is insufficient on its own to support Plaintiff's claim that his migraines were a severe impairment during the relevant period.

**B. Plaintiff's RFC**

Next, Plaintiff contends that the ALJ erred in failing to explain why the RFC assessment omitted findings of the treating psychiatrist, Dr. Vy Doan, M.D. [Pltf.'s Br. at 7-8, Pltf.'s Reply at 4-5.] As discussed below, the Court agrees.

Dr. Doan opined that Plaintiff has mild limitation in his activities of daily living, moderate limitation in social functioning, and mild limitations in his concentration, persistence or pace, ***and that he would miss one or two days of work per month due to his impairments***. [AR 31, 2013-2016.]

The ALJ gave Dr. Doan's opinion "partial weight." The ALJ found that the

limitation on Plaintiff's activities of daily living and social functioning are consistent with the record as a whole. Additionally, the ALJ found that "the opinion about [Plaintiff's] monthly absences is ***consistent*** with his noted improvement with his medication regimen." [AR 31.] Lastly, the ALJ found that Dr. Doan's limitations regarding Plaintiff's concentration, persistence, or pace were not consistent with the cognitive test results from Dr. Schwafel and Dr. Bagner. However, the ALJ's RFC did not account for Dr. Doan's opinion that Plaintiff would miss one or two days of work per month due to his impairments. [*Id.*] Plaintiff contends that the ALJ erred by failing to offer any explanation as to why this limitation was omitted from the RFC.

A claimant's RFC is the most a claimant can still do despite his limitations. *Smolen*, 80 F.3d at 1291 (citing 20 C.F.R. § 416.945(a)); SSR 96-8p (an RFC assessment is ordinarily the "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule"). In assessing a claimant's RFC, the ALJ must consider all of the relevant evidence in the record. *See* 20 C.F.R. § 416.945(a)(2), (3). If an RFC assessment conflicts with an opinion from a medical source, the ALJ "must explain why the opinion was not adopted." SSR 96-8p; *see also Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (explaining that an ALJ is not required to discuss all the evidence presented, but must explain the rejection of uncontroverted medical evidence, as well as significant probative evidence).

Here, although the ALJ purportedly found Dr. Doan's opinion regarding Plaintiff's absences to be consistent with the record as a whole, the ALJ failed to explain why she did not include this limitation in the RFC assessment. *See* SSR 96-8p; *see also Vincent*, 739 F.2d at 1394-95. The opinion of a treating psychiatrist, such as Dr. Doan, can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record. *Rodriguez v. Bowen*, 876 F.2d 759,

762 (9th Cir. 1989) ("The ALJ may disregard the treating physician's opinion, but only by setting forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence") (internal citation and quotations omitted). Here, the ALJ erred by failing to provide *any* reasons for rejecting this portion of Dr. Doan's opinion. In response, the Commissioner contends that even if the ALJ had acknowledged the limitation for absences and included it in the RFC finding, the outcome of the case would not change. [Def.'s Br. At 6-7.] The Commissioner's harmless error argument is not persuasive.

Dr. Doan was equivocal in his opinion that Plaintiff would have one or two absences per month. The vocational expert testified that one and a half absences per month (18 absences per year) would be acceptable, but that two absences per month would not. [AR 85.] Therefore, the amount of absences is relevant to whether or not Plaintiff is able to work. While it is true that Dr. Doan's findings of one *or* two absences per month does not necessarily indicate that Plaintiff is disabled, the ALJ's RFC assessment did not adequately reflect all of the limitations that were identified by Dr. Doan. Because the ALJ did not offer any specific explanation as to why she implicitly rejected this portion of Dr. Doan's findings, the ALJ's RFC assessment is not supported by substantial evidence. *See Vincent*, 739 F.2d at 1394-95; *see also Regennitter v. Comm'r of Soc. Sec. Admin.,* 166 F.3d 1294, 1298-99 (9th Cir. 1999). This error warrants reversal.[2]

## V. CONCLUSION

The decision of whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). When no useful purpose would be

---

[2] The Court has not reached the last issued raised by Plaintiff regarding the weight assigned to Dr. Gold and Dr. Schwafel except as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. However, the ALJ should address this additional contention of error in evaluating the opinion evidence on remand.

served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). But when there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

The Court finds that remand is appropriate because the circumstances of this case suggest that further administrative review could remedy the ALJ's errors. *See INS v. Ventura*, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, "except in rare circumstances"); *Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1101 (9th Cir. 2014) (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved"); *Harman*, 211 F.3d at 1180-81. The Court has found that the ALJ erred at step four of the sequential evaluation process. Thus, remand is appropriate to allow the Commissioner to continue the sequential evaluation process starting at step four.

For all of the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner is REVERSED and this matter REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Memorandum Opinion and Order; and

(2) Judgment be entered in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED: April 12, 2017

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE